# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| EUGENE SCALIA, Secretary of Labor, U.S. Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>E.L.THOMPSON ASSOCIATES, LLC, MELANIE PARKER, an individual, and<br>CONRAD F. PARKER, an individual,<br><br>Defendants. | Civil Action File Number:<br><br>3:18-cv-00023<br><br>Judge William L. Campbell, Jr.<br><br>Magistrate Judge Frensley |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants E.L. THOMPSON ASSOCIATES, LLC, MELANIE PARKER, and CONRAD F. PARKER (collectively, "Defendants") and file this Memorandum of Law in support of their *Motion for Summary Judgement* stating the following in support thereof :

### I. STATEMENT OF FACTS

As set out in the attached *Statement of Undisputed Material Facts* ("DSOF"), Defendant E.L. THOMPSON ASSOCIATES, LLC ("ELTA") is a construction

Page 1 of 16

company engaged in the construction industry. (*See* DSOF, paragraph 1 "DSOF-1") Defendants Melanie Parker and Conrad F. Parker are owners of Defendant ELTA. DSOF-1. On January 8, 2018, Plaintiff filed a complaint against Defendants, collectively, alleging, *inter alia*, that each defendant misclassified certain employees as independent contractors and further failed to pay such workers at a rate of time and a half for hours worked in excess of 40 hours per week. ECF-1.

There is no allegation ELTA failed to pay its direct employees properly. DSOF-3. Rather, the allegations in the complaint pertain to the employees of two of ELTA's subcontractors, Brandon Drywall, LLC ("Brandon") and Architectural Design, Inc ("Architectural").DSOF-4. It is undisputed that ELTA contracted with Brandon and Architectural to perform drywall and framing services. DSOF-4. Plaintiff alleges that 157 individuals hired by Brandon and Architectural were not paid appropriately for overtime work during a period ranging from August 1, 2015 through April 23, 2016. DSOF-20. The total amount of underpaid wages, as alleged by Plaintiff, is $85,550.75. DSOF-21.

Because Plaintiff has alleged ELTA is the "employer" of Brandon and Architectural's employees that worked on ELTA jobs, it is critical to understand the relationship between ELTA and Brandon/Architectural. Essentially, Plaintiff alleges Brandon and Architectural were not truly independent contractors, and as

such ELTA should be responsible for the wages of the employees if Brandon and Architectural.

Brandon and Architectural each approached ELTA as a potential service provider and each signed a separate contract with ELTA in which each agreed to provide construction services, pay the workers, pay all taxes, and provide insurance. DSOF-4;5. ELTA paid Brandon and Architectural at a set rate based on the number of hours of labor provided on the ELTA jobs. DSOF-4-7. Brandon and Architectural were responsible for hiring, firing, and supervising the workers each brought onto each jobsite. *Id*. Brandon and Architectural paid their employees an amount less than the amount that each received from ELTA, allowing each company the opportunity to earn a profit. DSOF-8. During the relevant period, both Brandon and Architectural performed work for other general contractors while working under contract for ELTA. DSOF-10;14. The subcontractors were only hired to perform work by ELTA on a project-to-project basis. DSOF-3.

On the projects in question, ELTA or the general contractor provided the building materials needed to drywall and frame. DSOF-16. However, Brandon, Architectural, and their employees brought their own hand tools for the work. *Id*. ELTA did not instruct the employees of Brandon or Architectural and had no right to hire or fire such employees. DSOF-14;17. Brandon and Architectural were limited

as to the hours in which construction could occur by local ordinance or by the general contractor. DSOF-18. Brandon and Architectural were in charge of their own employees, and there is no evidence that Defendants ever requested that any employee of Brandon or Architectural work in excess of 40 hours in a calendar week. *Id*.

## II. ISSUE

Plaintiff alleges Defendants are liable for underpaid overtime wages and failure to maintain record of its employees. Any liability for same is premised upon the argument the employees of Brandon and Architectural were "misclassified," and are actually the employees of ELTA.

Defendants assert that, as a matter of law, ELTA is not the employer of the workers in question, and therefore all Defendants are entitled to summary judgement on all claims.

## III. STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

Page 4 of 16

Case 3:18-cv-00023   Document 55   Filed 10/01/19   Page 4 of 17 PageID #: 1152

party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505.

Ordinarily, it is the court's job to determine whether a company has inappropriately classified a worker as an independent contractor. *Werner v. Bell Family Med. Ctr., Inc.*, 529 Fed. Appx. 541, 543 (6th Cir.2013). Therefore, so long as the material facts are not in dispute, this issue is appropriate for disposition on summary judgement.

### IV. Argument and Citation to Authority

There is insufficient evidence to support a finding that the workers in question were "employees" of ELTA. This is true because the workers were actually the employees of Architectural and Brandon. Architectural and Brandon were ELTA's independent contractors, despite Plaintiff's assertion to the contrary. As such, each count of the Complaint should be resolved in favor of the Defendants.

#### A. Brandon and Architectural are Independent Contractors

An "employee" is any person who is employed by an employer (29 U.S.C. §203(e)(1)). The act in turn defines the term "employ" as to "suffer or permit to work" (29 U.S.C. §203(g)). To determine whether an individual is an employee of

an alleged employer, Courts have applied the economic-reality test. In applying this economic-reality test, the 6th circuit has considered the following factors:

1. the permanency of the relationship between the parties;
2. the degree of skill required for the rendering of the services;
3. the worker's capital investment in the enterprise;
4. the worker's opportunity for profit or loss, depending upon his skill;
5. the degree of the alleged employer's right to control the manner in which the work is performed;
6. whether the service rendered is an integral part of the alleged employer's business; and
7. whether the business had authority to hire or fire the worker; *See Keller v. Miri Microsystems LLC,* 781 F.3d 799, 807 (6th Cir. 2015)

No one factor is determinative; "[a] central question is the worker's economic dependence upon the business for which he is laboring." *Donovan v. Brandel,* 736 F.2d 1114, 1120 (6th Cir. 1984).

In this case, to determine liability, this Court will need to analyze whether Brandon and Architectural were truly independent contractors. It is not the contention of ELTA that the actual workers themselves were independent contractors. As such, no inquiry into whether the workers were employees is relevant. Rather, at issue is whether Brandon and Architectural were bona fide independent contractors such that their employees are distinct from the employees of ELTA. Stated differently, the issue is whether ELTA is the employer, not whether

the workers are employees. As set out below, when applied to the undisputed facts of this case, the economic reality test supports a finding Brandon and Architectural were truly independent contractors, and therefore Defendants are not the constructive employers of their employees, the workers at issue in the present case.

### 1. *Permanency of Relationship*

The relationship between ELTA and Brandon/Architectural was definite and not permanent. As such, Brandon, Architectural, and their employees are not the employees of ELTA. Again, it is important to focus on the relationship between Brandon/Architectural and ELTA and not on the relationship between Brandon/Architectural and their employees.

"Generally, independent contractors have variable or impermanent working relationships with the principal company because they often have fixed employment periods and transfer from place to place as particular work is offered to them, whereas employees usually work for only one employer and such relationship is continuous and indefinite in duration." *Benion v. LeCom, Inc.*, 336 F. Supp. 3d 829, 848 (E.D. Mich. 2018)(internal citations omitted). If a contractor works for multiple different companies, that weighs in favor of finding an independent contractor relationship. *Id*.

Brandon and Architectural contracted with ELTA on a project-by-project basis, not indefinitely. DSOF-4. Additionally, the relationship was not exclusive; Brandon and Architectural were permitted to contract and provide services with other entities during the pendency of their work with ELTA. DSOF-10;14. Any argument that Brandon and Architecture's employees (i.e. the allegedly underpaid workers) were dependent on Brandon and Architectural for their livelihood is irrelevant to the inquiry of whether ELTA is their employer. Brandon and Architectural were not wholly dependent upon ELTA for income and worked for other contractors concurrently. *Id*.

This factor weighs strongly in favor of a finding Brandon and Architectural were independent contractors and solely responsible for payment of wages to their employees.

### 2. *The Degree of Skill Required*

A contractor is more likely to be found a true independent contractor if its profits depend on the initiative, judgment, or foresight of the typical independent contractor. *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 809 (6th Cir. 2015).

Brandon and Architectural contracted with ELTA to provide construction services, including drywall installation and framing. DSOF-4. These are skilled jobs. DSOF-6. However, the relevant skills here are the ones required of Brandon

and Architectural. This is the skill of locating and hiring workers, managing/supervising such workers, and appropriately providing insurance for such workers. Because the contracts between ELTA and the contractors provided a set $20.00 hourly rate for the provision of labor, the success of the contractors depended upon the business savvy and connections of the respective employers in locating skilled workers', hiring them at a value-adding wage, and controlling costs (including insurance costs) sufficiently to be profitable.

Because the profit of Brandon and Architectural depended upon their initiative, judgment, and foresight, these two companies should be viewed more as independent contractors than as employees.

### 3. *Capital Investment*

As with the other factors in this analysis, it is anticipated Plaintiff will argue the workers for Brandon and Architectural provided no capital investment and therefore are employees. Defendants do not disagree with this assertion. The issue is whether the workers are the employees of ELTA or whether they are the employees of Brandon/Architectural. As such, it is the capital investment of Brandon and Architectural in the project which should be analyzed.

Both Brandon and Architectural provided tools while ELTA provided building materials for the completion of the contracted work. DSOF-16. However,

before either contractor could begin supplying services to ELTA, they were required to secure insurance on each worker that was to provide services on the projects. DSOF-5. The cost of such insurance was paid by Brandon and Architectural prior to either company receiving any funds from Defendants and constitutes a capital investment on the part of Brandon and Architectural. So too do the wages paid to the workers by Brandon and Architectural, given the fact that ELTA was not responsible to pay until seven days following the submission of an invoice. DSOF-7. Brandon and Architectural were required to pay wages to their employees prior to getting paid by ELTA for such work.

Ultimately, this factor also weighs in favor of finding Brandon and Architectural were independent contractors.

### 4. *Opportunity for Loss or Profit Depends upon Skill*

As with factor 2, set out above, it is clear that the profit or loss of Brandon and Architectural depended upon their ability to limit costs and negotiate reasonable wages with its employees. As such, the opportunity for loss and profit greatly depended upon the skill of Brandon and Architectural in cost effectively staffing the projects. For instance, by staffing more workers and scheduling each worker for less hours, Brandon and Architectural could have earned the same income (by reporting the same total of hours) without incurring overtime costs. This is especially true

since ELTA did not require specific workers be present or specific hours be maintained. That ELTA required notification of the hours worked by Brandon or Architectural employees is separate from mandating hours; this was necessary to allow ELTA to audit invoices. It also is rational, given the number of labor hours contributed is how invoices from Brandon and Architectural were computed. Brandon and Architectural's ability to efficiently staff the contracted labor drove their ability to generate profit and avoid a loss.

This factor weighs in favor of an independent contractor relationship.

### 5. *Degree of Control Exerted by ELTA*

ELTA admittedly exerted some minimal control over Brandon and Architectural but no more so than a typical contractor-subcontractor relationship. ELTA did not hire or fire Brandon or Architectural employees. ELTA addressed any concerns with work performance with the management of Brandon and Architectural rather than directly with employees. ELTA did not negotiate the wages of the employees of Brandon or Architectural. ELTA was not permitted to allow Brandon and Architectural free access to jobsites which was controlled by the general contractor, but there is no evidence to suggest ELTA required Brandon or Architectural work a specific number of hours or on any specific days. Very

importantly, Brandon and Architectural were free to work, and in fact did work, for other contractors.

This factor also weighs in favor of finding Brandon and Architectural were independent contractors.

### 6. *Brandon & Architecture's role in ELTA's Business*

The services provided by Brandon and Architectural were admittedly a substantial aspect of ELTA's business in Tennessee. Brandon and Architectural provided drywall and framing labor to ELTA. ELTA was engaged in providing drywall and framing services.

This is the only factor that weighs in favor of finding Brandon and Architectural were something other than independent contractors. However, this factor is strongly outweighed by the remaining factors.

### 7. *Authority to Hire and Fire*

ELTA did not have the right to hire or fire Brandon, Architectural, or any of their employees. That ELTA would direct the dismissal of Brandon or Architectural employees who presented a safety hazard away from the jobsite does not constitute the ability to "fire." Brandon or Architectural could continue to employ such worker at other jobsites and for other contractors.

This factor weighs in favor of finding Brandon and Architectural were independent contractors.

## B. ELTA Is Not the Joint Employer of Brandon and Architectural's Employees

In addition to arguing ELTA was the direct employer of the workers in question (as opposed to Brandon and Architectural), Defendants anticipate Plaintiff may argue alternatively that ELTA is the joint employer of the workers, along with Brandon and/or Architectural. Certainly, the FLSA contemplates the possibility of joint employment, and an employee can have more than one employer.

As a preliminary matter, Plaintiff did not allege joint employment in its complaint. See ECF-1. Additionally, neither Brandon nor Architectural or their principals have been named as parties to this action. *Id*. As such, Defendants contend such argument is inappropriate. Regardless, the argument fails as a matter of law, even if properly raised.

Sixth Circuit Courts have applied the test set out in *Sanford v. Main Street Baptist Church Manor, Inc*., 327 Fed.Appx. 587, 594 (6th Cir. 2009) for the purpose of analyzing joint employment in the FLSA context. *See Sutton v. Cmty. Health Sys., Inc*., 116CV01318STAEGB, 2017 WL 3611757, at *3 (W.D. Tenn. Aug. 22, 2017)("Rather than adopt an out-of-circuit test, then, the Court will evaluate joint

employment under the FLSA using the factors from *Sanford* and *Metropolitan Detroit Bricklayers.*")

Under the *Sanford* test, in determining whether an entitiy that is not the formal employer may be considered the joint employer, the Court should consider: 1) the exercise of authority to hire, fire, and discipline; 2) control over pay and insurance; and 3) supervision. *Id*. After applying these factors to the present case, it is clear Defendants are not the joint employer.

### 1. *Authority to hire, fire, and discipline.*

ELTA did not have authority to hire or fire workers for either Brandon or Architectural. Admittedly, ELTA would request Brandon and/or Architectural remove employees from ELTA jobsites when they were presenting a safety hazard. However, Brandon and/or Architectural would be free to continue employing such worker and could assign the worker to another jobsite. Simply put, ELTA did not have the requisite authority over Brandon or Architectural employees to be considered a joint employer.

### 2. *Control over pay and insurance*

Brandon and Architectural negotiated wages directly with their own employees. They determined the method of pay and in fact were not even required to notify ELTA whether the workers were paid as 1099 or W2 workers. Brandon and

Architectural carried their own insurance covering their employees. This factor supports a finding ELTA is not the joint employer of Brandon and/or Architectural's employees.

### *3. Supervision*

ELTA foremen dealt directly with management of Brandon and Architectural and did not directly supervise the employees of Brandon or Architectural. There is no evidence to support a finding ELTA supervised Brandon and/or Architectural employees to an extent implicating them as joint employers.

In sum, the *Sanford* test, when applied to the undisputed facts of this case, supports a conclusion, as a matter of law, that ELTA was not a joint employer of the workers in question.

### V. CONCLUSION

Based upon the foregoing, it is clear Brandon and Architectural were bona fide independent contractors. To suggest otherwise would create liability for every general contractor to ensure every person on its jobsite is paid in compliance with the FLSA. Likewise, ELTA was not the joint employer of Brandon and/or Architectural's workers. Brandon and Architectural hired, fired, and supervised their own workers. Brandon and Architectural set the wages of each of their employees and paid their employees directly. Brandon and Architectural did not

work exclusively for ELTA. Their profit or loss depended upon their ability to efficiently staff and manage effective employees. Brandon and Architectural were required to invest in insurance and wages before ever receiving payment from ELTA. Importantly, the owners of Brandon and Architectural could earn profits without ever setting foot on an ELTA jobsite. All of these factors, pursuant to established law, support the finding that ELTA is not *the*, or *an* "employer" of the workers in question

This first (1st) day of October, 2019.

Respectfully submitted,

_____

Michael D. Cross, Jr.
Georgia Bar No. 198212,
Admitted *Pro Hac Vice*
&
Sonya S. Wright
Tennessee Bar No. 023898
Local Counsel

Page 16 of 16

Case 3:18-cv-00023 Document 55 Filed 10/01/19 Page 16 of 17 PageID #: 1164

# CERTIFICATE OF SERVICE

I certify that on October 1, 2019, copies of *Defendant's Motion for Summary Judgement*, *Memorandum of Law in Support of Defendants' Motion for Summary Judgment*, and Statement of Undisputed Material Facts were filed electronically. Notice of these filings will be sent to all parties indicated on the electronic filing receipt by operation of the Court's electronic filing system. Copies were also sent via email to the following:

>Willow Eden Fort, Esq.
>Counsel for Plaintiff
>Fort.Willow@dol.gov

This first (1st) day of October, 2019.

>Respectfully submitted,
>
>_____
>
>Michael D. Cross, Jr.
>Georgia Bar No. 198212,
>Admitted *Pro Hac Vice*
>    &
>Sonya S. Wright
>Tennessee Bar No. 023898
>Local Counsel