IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EUGENE SCALIA, Secretary of Labor, ) <br> U.S. Department of Labor, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> E. L. THOMPSON ASSOCIATES, LLC, ) <br> MELANIE PARKER, and ) <br> CONRAD F. PARKER, ) <br> ) <br> Defendants. ) | NO. 3:18-cv-00023 <br><br> JUDGE CAMPBELL <br> MAGISTRATE JUDGE FRENSLEY |

## MEMORANDUM

### I. Introduction

Pending before the Court are Plaintiff's Motion for Partial Summary Judgment (Doc. No. 50); Defendants' Motion for Summary Judgment (Doc. No. 54); and the parties' responses and replies. For the reasons set forth below, the parties' motions for summary judgment (Doc. Nos. 50, 54) are **DENIED.**

Also pending before the Court are Defendants' Motion for Leave to File Supplemental Authority (Doc. No. 71) and Defendants' Request for Oral Argument (Doc. No. 66), The Motion for Leave to File Supplemental Authority (Doc. No. 71) is **GRANTED,** as follows: the Court has considered Defendants' Supplemental Memorandum (Doc. No. 71-1) in reaching the decision set forth herein. The Request for Oral Argument (Doc. No. 66) is **DENIED,** as the Court finds oral argument unnecessary.

## II. Factual and Procedural Background

Plaintiff, the Secretary of Labor,[1] brings this action alleging E. L. Thompson Associates, LLC ("ELTA") and its two individual owners, Melanie Parker, and Conrad F. Parker, violated the Fair Labor Standards Act ("FLSA") by failing to pay overtime wages to 141 individuals, who are named in Exhibit A to the Complaint. (Doc. Nos. 1, 1-1). More specifically, Plaintiff alleges ELTA, which provides construction and drywall services, along with the individual defendants, "acted so as to employ the [named] employees . . . as construction workers, for the purpose of installing and finishing drywall" at various locations in Georgia, Alabama and Tennessee, while misclassifying the individuals as "independent contractors." (*Id.* ¶¶ 6, 9). As "employers" of these individuals, Plaintiff contends, the defendants are "severally liable" for the payment of wages and damages. (*Id.* ¶¶ 7-8). Plaintiff seeks unpaid wages and liquidated damages, as well as injunctive relief. (*Id.* ¶¶ 16-20).

Although both parties have filed motions for summary judgment, the Court would not characterize the facts in the record as straightforwardly presented. The parties apparently agree, however, that, from April 2014 to April 2016 (and perhaps, thereafter), Defendants used workers supplied by two "labor brokers," Architectural Design and Brandon Drywall, to perform framing and drywall work on various projects in Nashville. (Doc. Nos. 1 ¶¶ 17, 15; 59-1 ¶¶ 19, 20, 22, 26, 46, 47). The projects included the Westin Hotel, the Wildhorse Saloon, and the Ryman Opryland Hotel. (Doc. No. 59-1 ¶ 27, 46). The principal of Architectural Design, Arturo Arredondo, Jr.,

---

[1] When the Complaint (Doc No. 1) was filed, R. Alexander Acosta was the Secretary of Labor. Over the course of the litigation, Mr. Acosta was replaced by Eugene Scalia, who now serves as Plaintiff in this case. (Doc. No. 50). *See* Fed. R. Civ. P. 25(d) (the successor of a public officer who is a party in an official capacity is automatically substituted as a party).

signed a written contract in 2015, apparently drafted by ELTA (Doc. No. 56-2, at 3-4), in which he agreed to "assign" employees to ELTA at the rate of $20 per hour. The agreement also required Architectural Design to assume exclusive responsibility for the payment of wages, withholding of taxes, and maintenance of workers' compensation insurance. (*Id.*) The contract executed by Homero Posada in 2015, on behalf of Brandon Drywall, had identical provisions. (Doc. No. 56-2, at 1-2). The labor brokers paid the workers between $14 and $18 per hour for the work they performed on the ELTA projects. (Doc. No. 61 ¶ 8).[2]

ELTA tracked the amount owed to the labor brokers by having each worker sign one of three "sign-in sheets" when they appeared at the jobsite – one designated for Architectural Designs' workers headed "Arturo," one for Brandon Drywall's workers headed "Brandon," and one for ELTA employees. (Deposition of Steven Wayne Keymon, at 22 (Doc. No. 53-38); Doc. No. 59-1 ¶¶ 69-70). On a weekly basis, ELTA paid the labor brokers a lump sum, which they then distributed to the workers. (Deposition of Arturo Arredondo, Jr., at 23-24, 32-33 (Doc. No. 53-40)). All three sets of workers worked side-by-side and performed the same type of work. (Doc. No. 59-1 ¶ 32). The workers directly employed by ELTA, however, were apparently paid overtime wages by the company. (Doc. No. 59-1 ¶¶ 23, 34).

Plaintiff contends the labor-broker contracts were a device used by Defendants to avoid compliance with the FLSA, and that the labor-broker workers should have been considered

---

[2] The record also includes "Labor Only Subcontracts" between ELTA and Brandon Drywall governing three different projects and beginning on January 19, 2016. (Doc. Nos. 53-1, 53-2, 53-2; Doc. No. 59-1 ¶¶ 114-118). The contracts were not signed by Mr. Posada, however, until January 19, 2017. (*Id.*) Defendants apparently do not rely on these contracts to support their position regarding the status of the workers during the timeframe at issue here.

3

"employees" by ELTA and paid overtime as required. Defendants take the position that Architectural Designs and Brandon Drywall were responsible for paying any overtime to the workers supplied to ELTA. Defendants contend they were only obligated to pay the labor brokers $20 per hour for the workers supplied under the contracts, even if the workers logged more than 40 hours per week.

### III. Analysis

#### A. The Standards Governing Motions for Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has construed Rule 56 to "mandate[] the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.* Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, a court must draw all reasonable inferences in favor of the nonmoving party. *See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986); *Shreve v. Franklin County, Ohio,* 743 F.3d 126, 132 (6th Cir. 2014). The court does not, however, make credibility determinations, weigh the evidence, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

In order to defeat the motion, the nonmoving party must provide evidence, beyond the pleadings, upon which a reasonable jury could return a verdict in its favor. *Celotex Corp.*, 477 U.S. at 324; *Shreve,* 743 F.3d at 132. Ultimately, the court is to determine "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**B. <u>Employer/Employee Status</u>**

The FLSA requires employers to pay employees a minimum wage, and at least one-and-one-half times the regular rate of pay for overtime work. 29 U.S.C. §§ 206(a), 207(a); *Keller v. Miri Microsystems LLC,* 781 F.3d 799, 806 (6th Cir. 2015). The FLSA defines an "employee" as "any individual employed by an employer;" and defines the term "employ" as including "to suffer or permit to work." 29 U.S.C. §§ 203(e)(1), (g). The Act does not provide a specific definition of "employer."[3]

Although Defendants rely on the contracts with the labor brokers to support their argument they did not "employ" the labor-broker workers, the determination of whether workers should be considered "employees" under the Act is not dependent on the characterizations made in a contract. *See, e.g., Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 388 (6th Cir. 2016) (explaining that rights under the FLSA "cannot be abridged by contract or otherwise waived" because that would thwart the purposes of the statute). In arriving at a definition of "employee" under the Act, the Sixth Circuit has applied an "economic reality" test to reflect the Act's framework and purpose. *Keller,* 781 F.3d at 807 ("We have interpreted this framework, in light of the legislative purpose, to set for a standard that 'employees are those who as a matter of economic reality are dependent upon the business to which they render service.'")

---

[3] An "employer" under the Act, "includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. § 203(d).

5

The "economic-reality test" requires consideration of the following factors: "'1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity for profit or loss, depending upon his skill; . . . 5) the degree of the alleged employer's right to control the manner in which the work is performed[; and] . . . [6)] whether the service rendered is an integral part of the alleged employer's business.'" *Keller*, 781 F.3d at 807 (quoting *Donovan v. Brandel*, 736 F.2d 1114, 1117 (6th Cir. 1984)). Courts are also to consider whether the business has authority to hire or fire the individual, and whether the business maintains employment records. *Id.* "No one factor is determinative; '[a] central question is the worker's economic dependence upon the business for which he is laboring.'" *Id.* (quoting *Brandel,* 736 F.2d at 1120).

For purposes of summary judgment, Plaintiff contends that Defendants are "an" employer (along with the labor brokers) of the labor-broker workers, even though the Complaint also alleges Defendants are "the" employer of the individual workers. (Doc. No. 60, at 3). In that regard, the FLSA recognizes there may be more than one "employer" who is responsible for FLSA compliance. *See Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir. 1991) (citing *Falk v. Brennan,* 414 U.S. 190, 195, 94 S. Ct. 427, 431, 38 L. Ed. 2d 406 (1973)). Each "employer" is jointly and individually liable under the Act. *Id.*

Defendants argue Plaintiff cannot make such an argument because he failed to adequately plead "joint employment" and/or name the labor brokers as defendants in the Complaint. The Complaint alleges "[a]t all times hereinafter mentioned, Defendants acted so as to employ the employees named in 'Exhibit A.'" (Doc. No. 1 ¶ 6). In the Court's view, this allegation sufficiently asserts Defendants' status as employers of the named workers. Defendants have cited no authority

6

requiring a plaintiff to name or bring suit against all "employers" in a single action when suing for overtime wages under the FLSA. Thus, Defendants have not established Plaintiff should be barred from arguing the individual workers were their employees.[4]

In their Supplemental Memorandum (Doc. No. 71-1), Defendants also argue that a new regulation issued by the Department of Labor replaces the "economic-reality test" applied by the Sixth Circuit. Plaintiff argues that application of the new rule will not change the outcome in this case. The new regulation, codified at 29 C.F.R. § 791.2, identifies four factors relevant to whether a business qualifies as a "joint employer" under the FLSA. Subsection (a)(1) looks to whether the business: (1) hires or fires the employee; (2) supervises and controls the employee's work schedule or conditions of employment to a substantial degree; (3) determines the employee's rate and method of payment; and (4) maintains the employee's employment records. 29 C.F.R. § 791.2(a)(1). The regulation states that the business must exercise "directly or indirectly" one or more of these "indicia of control" to be jointly liable under the Act. 29 C.F.R. § 791.2(a)(3)(i). In applying the factors, however, the regulation provides: "[n]o single factor is dispositive in determining joint employer status under the Act. Whether a person is a joint employer under the Act will depend on how all the facts in a particular case relate to these factors, and the appropriate weight to give each factor will vary depending on the circumstances of how that factor does or does not suggest control in the particular case." *Id.*

---

[4] Defendants also argue at length that the issue to be decided is whether "Arturo" and "Brandon" were ELTA's "employees." As described above, however, the Complaint alleges the individual workers in Exhibit A, not the labor brokers, are ELTA's "employees." Defendants' arguments regarding the status of the labor brokers does not advance the applicable analysis.

7

The Court need not determine whether the Sixth Circuit would replace the "economic-reality" test with the new regulation,[5] at this stage of the litigation, however, because summary judgment is not warranted under either test. The record reveals genuine disputes regarding the facts material to applying both tests.[6] For example, the record contains contradictory testimony regarding ELTA's right to control the manner in which the work of the labor-broker workers was performed, as well as ELTA's supervision and control of the workers' schedules. Mr. Arredondo testified that ELTA made clear to him "they were in charge" of what the labor workers did on the job site. (Doc. No. 53-40, at 17, 25). He said J.B. Hite, one of ELTA's supervisors, told him: "Inside the building, I control people. I control everything." (*Id.,* at 19, 39-40). According to Mr. Arredondo, neither he nor anyone from his business was on the job site to supervise workers. (*Id.,* at 19-20, 40-42). In his affidavit, Mr. Hite states that he did not provide any feedback or direction to Arturo's [Mr. Arredondo's] workers on the job site, and that Arturo kept a supervisor on site at all times. (Doc. No. 59-2 ¶¶ 9, 11). Mr. Hite denies ever excluding Arturo from a job site. (*Id.* ¶ 10). Gumaro Ortiz, a former worker for Brandon, testified that neither labor broker had supervisors on site, and that J.B. Hite was the boss. (Doc. No. 53-39, at 20, 47). According to Mr. Ortiz, Mr. Hite told him told him where he should work as the day progressed. (*Id.,* at 28-29). Sixto Herrera,

---

[5] The Court notes the regulation has been challenged by eighteen states under the Administrative Procedures Act. *See New York v. Scalia,* ___ F. Supp. 3d ___, 2020 WL 2857207 (S.D.N.Y. June 1, 2020); *see also Elsayed v. Family Fare LLC,* 2020 WL 4586788, at *4 (M.D.N.C. Aug. 10, 2020) (electing to apply both the Fourth Circuit test and the test in new regulation to the issue of whether defendants were "employees" under the FLSA).

[6] Summary judgment is also inappropriate because the parties' briefs lack sufficient detail regarding the relevant factors. For example, the parties have failed to present a coherent timeline of events that matches the dates of work with the jobsite, the name of the labor broker supplying the workers, and the written contract allegedly applicable to the project, etc.

an ELTA foreman, testified that the labor-broker workers could not work on the site without an ELTA supervisor there to supervise their work. (Doc. No. 53-27, at 50). On the other hand, Mr. Herrera testified that, if he noticed a problem with the work, he told the labor-broker supervisor to fix it. (*Id.*, at 34). And Steven Keyman, another ELTA foreman, testified that he directed the work of the labor-broker workers by speaking to the representatives of the labor brokers, whom he alternatively characterized as "translators" or "supervisors." (Doc. No. 53-38, at 22, 24-25, 69-70).

As for the hours worked, Mr. Arredondo testified that the hours of the workers he supplied to ELTA were set by ELTA. (*Id.,* at 20). According to Mr. Keymon, the normal workweek for ELTA was 10 hours on Monday through Thursday, eight hours on Friday and Saturday, and eight hours if Sunday work was required. (Doc. No. 53-38, at 75-76; *see also* Ortiz Deposition, at 26-28). But it is not clear that these hours applied at all times, or to all job sites. (Doc. No. 59-1 ¶¶ 50, 51). On the other hand, Mr. Hite states that he did not mandate that Arturo's workers work any specific schedule, or that they work in excess of 40 hours per week. (Doc. No. 59-2 ¶ 7). Mr. Hite does not address Brandon's workers.

On the issue of who had the authority to hire or fire the labor-broker workers, Mr. Arredondo testified that ELTA supervisors "sent [workers] home" if they believed the workers were working slowly or were on the phone too much. (Doc. No. 53-40, at 26-27, 54). Mr. Arredondo said he was not always informed when ELTA told a worker to leave the job site. (*Id.*, at 27). Mr. Ortiz testified that Mr. Hite and other ELTA supervisors had the ability to fire labor-

9

broker workers. (Doc. No. 53-39, at 30-31). By contrast, Mr. Hite states that he did not have the authority to hire or fire Mr. Arturo's workers, and has never done so. (Doc. No. 59-2 ¶¶ 4, 5).[7]

Resolving these factual disputes requires the Court to weigh the evidence and make credibility determinations, neither of which are permissible at the summary judgment stage. Thus, the Court cannot decide the issue of whether the defendants acted as "employers" of the labor-broker workers during the relevant timeframe, and the parties' motions are denied.

## IV. Conclusion

For the reasons discussed above, the motions for summary judgment are denied.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[7] Both sides cite the testimony of Mr. Keymon. Mr. Keymon testified that he could only "fire" ELTA employees, but if he needed to fire a labor-broker worker, he would tell a translator with the labor broker that "they're not welcome here" or "[h]e ain't making production." (Doc. No. 53-38, at 53, 54). If a worker for a labor broker showed up at work drunk, Mr. Keymon testified he would "send him back home." (*Id.,* at 62).